RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-2581

THOMAS JAMES KRUGER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:08-cr-00155—Robert J. Jonker, Chief District Judge.

Decided and Filed:  September 30, 2016

Before:  GILMAN, GIBBONS, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:**  Anna R. Rapa, Grand Rapids, Michigan, for Appellant.  B. Rene Shekmer, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  Thomas Kruger was sentenced in 2009 to 120 months of imprisonment for his drug offense, 68 months below the U.S. Sentencing Guidelines' recommended range of 188 to 235 months.  In 2014, the U.S. Sentencing Commission adopted Amendment 782 to the Guidelines.  This Amendment, had it been in effect when Kruger was sentenced in 2009, would have reduced his sentencing range to 151 to 188 months of imprisonment.

1

In 2011, however, the Commission promulgated Amendment 759, which prohibits the retroactive application of Guidelines amendments to those defendants, such as Kruger, whose sentences are for terms of imprisonment "less than the minimum of the amended guideline range." Kruger claims that this limitation on his right to seek the retroactive application of Amendment 782 violates the *Ex Post Facto* Clause of Article I of the U.S. Constitution.

For the reasons set forth below, we join all of our sister circuits that have considered this issue and conclude that the *Ex Post Facto* Clause has not been violated in the present case. We accordingly **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Thomas Kruger pleaded guilty in August 2008 to one count of possessing pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1). The maximum penalty permitted by statute for this offense is 20 years of imprisonment. *Id.* § 841(c). Kruger was sentenced in January 2009. At that time, the November 2008 edition of the U.S. Sentencing Guidelines was used to calculate the recommended sentencing range applicable to his case. *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). Under that edition of the Guidelines, Kruger's Base Offense Level was 34 and his Criminal History Category was VI. His final recommended sentencing range was 188 to 235 months of imprisonment after subtracting from his Base Offense Level three points for acceptance of responsibility. *See id.* § 3E1.1.

The district court accepted this Guidelines calculation, but nonetheless varied downward from the Guidelines and imposed a sentence of 120 months of imprisonment and three years of supervised release. Its reason for doing so was based on the court's conclusion that the proposed Guidelines range overstated the seriousness of Kruger's offense and the significance of his criminal history.

Five years after Kruger was sentenced, the Sentencing Commission amended the Guidelines so that, effective in November 2014, the Base Offense Levels for possession of certain drug quantities were reduced by two levels. U.S.S.G. App. C Supp., Amend. 782.

If Kruger had been sentenced under the amended Guidelines, his recommended sentencing range would have been 151 to 188 months of imprisonment rather than the 188 to 235 months of imprisonment that had originally applied to him under the 2008 Guidelines.

Certain amendments to the Guidelines apply retroactively. *See* U.S.S.G. § 1B1.10(a)(1). When such an amendment to the Guidelines takes effect, a defendant may move to modify his sentence pursuant to that amendment. As applicable to this case, 18 U.S.C. § 3582 provides in relevant part as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). A necessary precondition to relief under § 3582(c)(2) is that the relief requested be "consistent with applicable policy statements issued by the Sentencing Commission," *Dillon v. United States*, 560 U.S. 817, 821 (2010), including the policy statement concerning the modifications of sentences under amended Guidelines ranges, *see* U.S.S.G. § 1B1.10.

When Kruger was sentenced in 2009, the Guidelines provided that where a defendant, like Kruger, had been sentenced below the range applicable to him at the time he was sentenced, "a reduction comparably less than the amended guideline range . . . may be appropriate." U.S.S.G. § 1B1.10(b)(2)(B) (2008). Effective in November 2011, however, § 1B1.10(b) was amended to provide, as relevant here, that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3852(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range." U.S.S.G. App. C, Amend. 759. In choosing to create a categorical prohibition on sentencing reductions for defendants whose original sentences were below the minimum of the amended Guidelines range, the Commission observed that such a categorical rule would "promote[] conformity with the amended guideline range and avoid[] undue complexity and litigation." *Id.*

Kruger filed a motion to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 in December 2014. The U.S. Probation Office recommended against modifying his sentence, concluding that he was ineligible for a sentence reduction under Amendment 759 because his original sentence was below the minimum of the amended Guidelines range. Both the U.S. Attorney General and the district court concurred in this assessment. This timely appeal followed.

## II. ANALYSIS

### A.      Standard of review

We review de novo a district court's determination that a defendant is ineligible for a sentence reduction pursuant to 18 U.S.C. § 3582. *United States v. Watkins*, 625 F.3d 277, 280 (6th Cir. 2010). Claims under the *Ex Post Facto* Clause are similarly reviewed de novo. *United States v. Welch*, 689 F.3d 529, 532 (6th Cir. 2012).

### B.      *Ex Post Facto* Clause

Kruger's sole claim on appeal is that Amendment 759, which amended § 1B1.10(b) to prohibit the retroactive application of sentencing reductions such as Amendment 782 if a defendant's original sentence is below the minimum of the amended Guidelines range, violates the *Ex Post Facto* Clause. That Clause provides that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. The prohibition "forbids the Congress . . . to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 71 U.S. 277, 325-26 (1866)). Kruger's claim is that Amendment 759 increases the punishment for his crime by rendering him categorically ineligible for a later sentencing reduction under Amendment 782. We are not persuaded.

"[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29; *see also Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006). The government does not dispute that the first of these elements is met.

There is no question that Amendment 759 "applies to prisoners convicted for acts committed before the provision's effective date." *Weaver*, 450 U.S. at 31. The nub of the dispute in this case, then, is whether Kruger was "disadvantage[d]" by the Amendment. *Id.* at 29.

A law "disadvantages" a defendant when it retroactively "increases the penalty by which a crime is punishable." *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 506-07 n.3 (1995). "[M]ere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the *Ex Post Facto* Clause." *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013). Rather, "[t]he touchstone of th[e] . . . inquiry is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* at 2082 (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)).

Determining whether a particular law creates a sufficient risk of increased punishment "is a 'matter of degree'; the test cannot be reduced to a 'single formula.'" *Id.* (quoting *Morales*, 514 U.S. at 509). The fact that the sentencing court exercises some degree of discretion, for example, does not necessarily foreclose an *ex post facto* claim. *Id.* at 2081. On the other hand, if a new, retroactive law has "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, [its] . . . conjectural effects are insufficient" to trigger the protections of the *Ex Post Facto* Clause. *Morales*, 514 U.S. at 509.

Amendment 759 came into effect in November 2011. It amended U.S.S.G. § 1B1.10(b) to deprive prisoners seeking sentence modifications under 18 U.S.C. § 3582(c)(2) of the benefit of amendments to the Guidelines in cases in which the defendant's original sentence was below the minimum of the new, amended Guidelines range. U.S.S.G. § 1B1.10(b)(2). Not until 2014 was an amendment passed that had any bearing on Kruger's sentence: Amendment 782 reduced the base offense level by two levels for the quantity of pseudoephedrine that he was found to have possessed with the intent to manufacture methamphetamine.

Amendment 759 does not "increase[] the measure of punishment" imposed on Kruger in 2009. *See Morales*, 514 U.S. at 509. Two principal facts lead to this conclusion. First, "the

[2008] version of § 1B1.10 didn't list Amendment 782 (which wouldn't come into existence for several more years) as a covered amendment, and so it could not have afforded him any relief on the basis of it." *United States v. Hinson*, 637 F. App'x 526, 528 (10th Cir. 2016). Second, and more generally, "[b]y nature, a § 3582(c)(2) proceeding to reduce a sentence . . . cannot increase a punishment," *United States v. Diggs*, 768 F.3d 643, 645 (7th Cir. 2014), and consequently cannot violate the *Ex Post Facto* Clause. *Morales*, 514 U.S. at 509 (concluding that the *Ex Post Facto* Clause's effect is to "prohibit[] increasing the measure of punishment for covered crimes" after the crime is completed).

This conclusion regarding Amendment 759 has been reached in five of our sister circuits. *See United States v. Thompson*, 825 F.3d 198, 200 (3d Cir. 2016); *Hinson*, 637 F. App'x at 528; *Diggs*, 768 F.3d at 645; *United States v. Waters*, 771 F.3d 679, 681 (9th Cir. 2014) (per curiam); *United States v. Colon*, 707 F.3d 1255, 1259 (11th Cir. 2013). No circuit has ruled to the contrary.

Kruger attempts to neutralize this unanimous weight of authority by quoting *Peugh* for the proposition that the appropriate test in determining whether a retroactive law "disadvantages" a defendant is "whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Peugh*, 133 S. Ct. at 2082 (internal quotation marks omitted). He then goes on to assert that "the Supreme Court has gone even further—based on *ex post facto* prohibitions, it has also protected the inverse right to have an inmate's opportunities for early release or a sentence reduction changed after the date of the crime." *Id.* at 10-11 (citing *Weaver*, 450 U.S. at 30-31, *Lynce v. Mathis*, 519 U.S. 433 (1997), and *Garner*, 529 U.S. at 249).

There is a material factual distinction regarding *Weaver* and its progeny, however, that forecloses relief in the instant case. The cases that Kruger cites all involve instances in which the law stripped prisoners of opportunities for early release *that existed at the time that their crimes were committed*. In *Weaver*, the "gain time" formula that would have allowed a prisoner's early release was "in place on both the date of the offense and the date of sentencing." *Weaver*, 450 U.S. at 26. That formula was more lenient than the formula enacted four years later, rendering the latter's application to the prisoner a violation of the *Ex Post Facto* Clause. *Id.* at

35-36. Similarly, in *Lynce*, the retroactive cancellation of earned early-release credits, to which the prisoner was entitled under a law preceding the commission of his offense, was held to violate the *Ex Post Facto* Clause. *Lynce*, 519 U.S. at 445-47. In a related vein, the Court in *Garner* remanded the case for development of the record in order to ascertain whether changes in parole-board hearing rules from those in effect at the time of the prisoner's offense created a sufficient risk of lengthier incarceration to invoke the *Ex Post Facto* Clause. *Garner*, 529 U.S. at 257. These cases illustrate the principle that a law violates the *Ex Post Facto* Clause when it increases the punishment "assigned by law when the act to be punished occurred." *Weaver*, 450 U.S. at 30.

Unlike the laws at issue in *Weaver*, *Lynce*, and *Garner*, the law that Kruger relies on for a modified sentence—that is, Amendment 782—came into place *after* the commission of his crime. As the Seventh Circuit explained in *Diggs*, "the leniency policy [in *Weaver*] already existed and was subsequently taken away. Here, however, the leniency policy (Amendment 7[82]) was enacted *after* [Kruger] was sentenced. He simply has no entitlement to the retroactive application of favorable policies or amendments enacted after his sentencing." *Diggs*, 768 F.3d at 646 (citation omitted) (emphasis in original).

Kruger counters that the "leniency policy" on which we should focus is the version of § 1B1.10(b)(2) that existed in 2009 prior to Amendment 759 in 2011. This version was in effect at the time Kruger committed his offense and, according to Kruger, was "subsequently taken away." *Id.* The problem with Kruger's argument is that Amendment 759 negatively impacts his sentence "only because he is not among the . . . category of defendants to which . . . [Amendment 782] retroactively appl[i]es, not because his punishment has been retroactively increased." *See Diggs*, 768 F.3d at 646. Without subsequent Amendment 782 altering the Base Offense Level for the quantity of pseudoephedrine that Kruger possessed, Amendment 759's alteration of U.S.S.G. § 1B1.10(b)(2) would have had no effect on his sentence. Moreover, Amendment 759's maximum potential effect on Kruger was to deprive him of the *possibility* of a lower sentence; it did not *increase* the sentence already imposed.

Kruger, in sum, has no constitutional right to the retroactive application of a more lenient version of the Guidelines. *See Dillon v. United States*, 560 U.S. 817, 828 (2010) ("We are aware

of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments."). This means that Amendment 759, by foreclosing retroactive relief under Amendment 782, does not have the effect, prohibited by the *Ex Post Facto* Clause, "of increasing the measure of punishment" imposed upon Kruger in 2009. *See Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995). Rather, Amendment 759 does no more than foreclose the possibility of a reduced sentence on the basis of an amendment that did not even exist at the time Kruger was sentenced and as to the application of which he has no legal entitlement. Amendment 759 is consequently not an *ex post facto* law insofar as Kruger is concerned.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.