**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0600n.06

Case No. 17-2341

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 29, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| HARPINDER SIAN, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: ROGERS, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. A jury convicted Harpinder Sian on two drug-related charges. Sian now appeals several evidentiary rulings from that trial. He also challenges his sentence as both procedurally and substantively unreasonable. We affirm.

I.

Harpinder Sian orchestrated a drug distribution network from his home in Ontario, Canada. He would obtain several thousand ecstasy pills and then have couriers smuggle them into the United States for distribution. But when the government arrested these couriers, the scheme unraveled. Two such couriers agreed to record phone calls between themselves and Sian. In these phone calls, Sian arranged the delivery of ecstasy pills to the couriers—thus giving the government a rare "smoking gun" it could use to prosecute Sian. The United States charged Sian with

conspiring to possess and actually possessing a controlled substance with the intent to distribute. A jury convicted Sian on both charges, and he now appeals.

II.

We review Sian's claim that the district court improperly admitted four statements at trial for an abuse of discretion. *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003).

*Helmerson's courier testimony.* Sian claims that the district court improperly admitted hearsay at trial. Hearsay is an out-of-court statement that is used to prove the truth of the matter asserted in that statement. Fed. R. Evid. 801(c). So, to constitute hearsay, the testifying witness must repeat an out-of-court statement. Sian's first objection is meritless because the testimony he points to does not include *any* out-of-court statements. DHS Agent Brian Helmerson testified at trial about Sian's couriers. Helmerson said that he identified the couriers "[t]hrough witness statements, photo identifications, [and] interviews," but Helmerson never actually described those "witness statements" or recounted those "interviews." R. 89, Pg. ID 619; *see United States v. Gholston*, 10 F.3d 384, 388 (6th Cir. 1993); *see also United States v. Ibarra-Diaz*, 805 F.3d 908, 919–20 (10th Cir. 2015). In limiting his testimony to the actions that he took during the investigation, he simply provided "the background of the case and the reasons for [his] . . . actions"; he did not discuss what those witnesses told him or said out of court. *Gholston*, 10 F.3d at 388; *see also United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990). Since Helmerson's testimony did not include out-of-court statements, the district court properly found that it was not hearsay.

*Helmerson's fingerprint testimony.* Sian's second objection also fails because the testimony he points to is not hearsay. Hearsay must include not only an out-of-court statement, but also a statement used for a specific purpose: proving the matter asserted in that statement.

Out-of-court statements are not hearsay if they are used for different purposes. *United States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir. 2015). While Sian's second objection points to testimony that includes an out-of-court statement, it fails because those statements were not being used to prove what was said in them. Helmerson testified that he did not test the physical evidence for fingerprints because he "had previously received information that [such] efforts would be fruitless." R. 89, Pg. ID 642. But the government did not offer that statement to prove that fingerprint testing would indeed have been fruitless. Instead, the government offered Helmerson's testimony for a different purpose: to show why Helmerson made a specific investigative decision. *See Martin*, 897 F.2d at 1371. That purpose means the out-of-court statement was not hearsay.

*Helmerson's tape testimony.* Sian's third objection falls short for a different reason. Sometimes the Rules of Evidence define a statement that otherwise looks like hearsay as the very opposite: "not hearsay." Fed. R. Evid. 801(d). When the out-of-court statement was made by the defendant himself, for instance, the Rules do not count that statement as hearsay when it is used by the government. Fed. R. Evid. 801(d)(2)(A). At trial, Helmerson discussed a tape recording between Sian and one of his couriers, Edward Hermiz. When the government asked Helmerson about the tape's contents, the agent stated that "[Sian] was going to provide additional quantities of illegal drugs to . . . Mr. Hermiz . . . ." R. 89, Pg. ID 591. Sian objected to Helmerson's testimony as hearsay. Although Helmerson testified about an out-of-court statement (Sian's discussion of the drug quantities) that the government wanted to prove, the statement came from Sian himself. *See United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010). And when the agent summarized Hermiz's statements, he did so only to provide context and not for the truth of Hermiz's statements. *See id.* ("[T]he statements made by others were not admitted to show the truth of the matters asserted, but to provide context for [the defendant's] admissions.").

Accordingly, the district court properly found that this statement was "not hearsay." Fed. R. Evid. 801(d).

*Bryant's testimony.* Finally, Sian objects to his coconspirator's statements. But these statements were "during and in furtherance of the conspiracy" and thus are "not hearsay." Fed. R. Evid. 801(d)(2)(E). At trial, courier Demond Bryant testified that another courier (the "Hockey Player") said that he had large quantities of drugs to deliver to "the Chaldeans," some of Sian's top customers. R. 90, Pg. ID 726. Sian maintains that the district court should have excluded the statement because it was "[m]ere 'idle chatter'" that did not further the drug conspiracy. *United States v. Salgado*, 250 F.3d 438, 449–50 (6th Cir. 2001) (citing *United States v. Maliszewski,* 161 F.3d 992, 1009 (6th Cir. 1998)). But discussions about the quantities that top customers will receive go directly to the heart of a drug distribution conspiracy. *See id.* at 450. Thus, the district court properly admitted the statements as "not hearsay" because they were made "in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).[1]

### III.

Sian challenges another evidentiary ruling by the district court, which we again review for abuse of discretion. *Wright*, 343 F.3d at 865. He also contests the district court's denial of a Rule 29 motion for judgment of acquittal due to insufficient evidence, which we review de novo. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).

---

[1] Sian also suggests that the government improperly used this statement as evidence of "other bad acts" in order to expand the scope of his liability. *See generally* Fed. R. Evid. 404(b). But statements about top customers in a drug distribution conspiracy provide necessary information about the conspiracy. *United States v. Rios*, 830 F.3d 403, 426 (6th Cir. 2016) (holding that evidence that is "'inextricably intertwined' with the indicted crime" is not subject to exclusion under Fed. R. Evid. 404(b) (quoting *United States v. McGee*, 510 F. App'x 377, 381 (6th Cir. 2013))).

*Tape recording.* Sian contends that the district court erred when it admitted a tape recording about drug deliveries between Sian and Bryant. In the recording, Sian said, "[b]ut you think just because you're African-American you think you can talk like [that], you think it's gonna be your way or the highway . . . ." Appellee Br. 15; *see* R. 90, Pg. ID 747. Sian believed this statement made the tape more prejudicial than probative. But the district court concluded that the tape's probative value was not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The tape recording heavily corroborated Sian's involvement in the conspiracy, and, as the district court concluded, the objectionable statement only appeared as an "isolated reference." R. 90, Pg. ID 748. Plus, the district court noted that the jury had already heard "all different types of language," making it unlikely that this particular reference would cause unfair prejudice. R. 90, Pg. ID 747–48. Thus, the district court did not abuse its discretion in concluding that the probative value of the tape outweighed the speculative prejudice of an isolated and vague statement within it. *See, e.g.*, *United States v. Frasch*, 818 F.2d 631, 633–34 (7th Cir. 1987); *United States v. Harbin*, 601 F.2d 773, 780 (5th Cir. 1979); *cf. United States v. Bright*, 630 F.2d 804, 814 (5th Cir. 1980).

*Sufficiency of the evidence.* Sian additionally challenges the sufficiency of the evidence supporting the jury verdict. *See* Fed. R. Crim. P. 29(a); *Garcia*, 758 F.3d at 718. He claims that the government's case rested on two witnesses, and these witnesses were not credible enough to support his conviction. To him, their "testimony was inherently incredible, self-serving and mendacious such that no rational jury should have credited their testimony . . . ." Appellant Br. 52. But, when considering whether sufficient evidence supports the jury verdict, this court does not "make [its] own assessment of the credibility of the witnesses who testified at trial." *Garcia*, 758 F.3d at 718. Credibility determinations go to the *quality* of the government's evidence, not

the *sufficiency*. *United States v. Conatser*, 514 F.3d 508, 518–19 (6th Cir. 2008). Therefore, because Sian has attacked only witness credibility on appeal, his challenge fails.

IV.

Sian challenges his sentence as both procedurally and substantively unreasonable, and we review his "sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tristan-Madrigal*, 601 F.3d 629, 632 (6th Cir. 2010).

Sian maintains that the district court erred when it applied two enhancements to his sentence, both involving his role as a "manager or supervisor" in the drug conspiracy. *See* U.S. Sentencing Guidelines Manual § 3B1.1(b) (U.S. Sentencing Comm'n 2016) (recommending a three-level enhancement if the defendant managed or supervised a criminal activity involving five or more people); *see also id.* § 2D1.1(b)(15)(C) (recommending a two-level enhancement if the defendant managed or supervised a crime that involved the importation of a controlled substance). He argues that these enhancements made his sentence procedurally unreasonable.

First, he contends that applying the § 2D1.1(b)(15)(C) manager enhancement violated the Ex Post Facto Clause. U.S. Const. art. I, § 9, cl. 3. The Ex Post Facto Clause forbids laws that increase the penalty for a crime after that crime was already committed. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 389 (1798) (Chase, J.). That means that a later-added Sentencing Guideline cannot enhance the sentence for a prior-committed crime. *Peugh v. United States*, 569 U.S. 530, 544 (2013). And since Sian completed his role in the conspiracy in 2007, he contends that the two-level § 2D1.1(b)(15)(C) enhancement—added to the Guidelines in *2014*—should not have applied to him.

But since this enhancement did not "retroactively 'increase[] the penalty by which [Sian's] crime in punishable,'" it does not violate the Ex Post Facto Clause. *United States v. Kruger*,

838 F.3d 786, 790 (6th Cir. 2016) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506–07 n.3 (1995)). An enhancement must "disadvantage the offender affected by it" to violate the Ex Post Facto Clause. *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)). Sian, however, would have had the same Guidelines range under either the 2007 version (without the enhancement) or the 2016 version. Under the 2007 Sentencing Guidelines, Sian would have received a base offense level of 36 for the drug quantities involved in his case. U.S.S.G § 2D1.1(c)(2) (2007). Yet, under the 2016 Sentencing Guidelines, the exact same quantity of drugs yields a base offense level of 34. *Id.* § 2D1.1(c)(3) (2016). When the district court applied the § 2D1.1(b)(15)(C) manager enhancement, it brought Sian's offense level up to 36—the very same offense level that he would have had under the 2007 Sentencing Guidelines without the enhancement. Therefore, adding the § 2D1.1(b)(15)(C) manager enhancement did not disadvantage Sian, so it did not violate the Ex Post Facto Clause. *See Peugh*, 569 U.S. at 535 (holding that the Ex Post Facto Clause is violated only if the defendant receives a "higher applicable sentencing range"); *see also United States v. Ramirez*, 846 F.3d 615, 622 (2d Cir. 2017) ("The relevant inquiry for *ex post facto* analysis is not whether a particular amendment to the Sentencing Guidelines is detrimental to a defendant, but whether application of the later version of the Sentencing Guidelines, considered as a whole, results in a more onerous penalty." (internal quotation marks and alteration omitted)).

Second, Sian argues that the government did not present enough evidence to prove that he was a "manager or supervisor" in the drug conspiracy. Yet the district court correctly noted that Sian was just one rung below the conspiracy's primary ringleader. In this role, Sian recruited and supervised couriers, established pill prices, and even directed merchandise to certain customers. Such evidence about his supervisory role gave the district court sufficient evidence to reasonably

conclude that Sian was a "manager or supervisor" in the conspiracy. *See United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). Thus, Sian's sentence is not procedurally unreasonable.

Sian makes one last effort to challenge his sentence as substantively unreasonable. At sentencing, the district court varied downward from the Guidelines-recommended 262-to-327-month range and imposed a 120-month sentence instead. Sian contends that the district court imposed this sentence arbitrarily. But the 120-month sentence reflects a figure well below the Guidelines range, and a defendant like Sian has a "demanding" task in demonstrating that it was unreasonable. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). However, he only cites the law on substantive reasonableness without pressing an argument that demonstrates that his sentence was unreasonable. *Id.* And the record shows that the district court properly balanced Sian's history and characteristics against the need for deterrence to arrive at the 120-month sentence. Thus, Sian's final challenge fails.

We affirm.